**Mary Beth MEYER, Plaintiff-Appellee,**

**v.**

**BROWN & ROOT CONSTRUCTION COMPANY, Defendant-Appellant.**

No. 81–1222
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 13, 1981.

**370**

Vinson & Elkins, W. Carl Jordan, Christopher A. Knepp, Houston, Tex., for defendant-appellant.

Art Brender, Fort Worth, Tex., for plaintiff-appellee.

Before GEE, GARZA and TATE, Circuit Judges.

GARZA, Circuit Judge.

Mary Beth Meyer, a white female, was hired by the Brown and Root Company on July 30, 1976 for employment at its Glen Rose construction site. She was classified as a warehouse helper; her initial duties included coding equipment and furniture and issuing warehouse tickets when equipment arrived. Approximately two years later, she was given the additional duties of preparing accounting records, reports, and inventories. The nature of her position required that she split her workday between the warehouse and the office but she was not engaged in the inventory of heavy

equipment in the field after the middle of 1978. In July of 1978, plaintiff was married and in September she informed her supervisor that she was pregnant. She was informed that she would be granted a leave of absence for her pregnancy when she was ready. It is undisputed that Meyer had a good work record and good working relationship with her co-workers at all times during her tenure at Brown & Root.

On January 9, 1979, Meyer arrived at work to find a new person sitting at her desk. She had been informed the day before this that she would be training an individual to replace her during her leave, but was not told that the replacement had actually been hired. When she arrived at work the following day, her supervisor ordered her to clear out her desk because she was going to work in the warehouse. She immediately questioned the supervisor concerning the nature of her duties in the warehouse. He informed her at this point, "you're going to work with Ed and Phil." This concerned plaintiff since the individuals referred to performed heavy manual labor of a type which would be impossible for her to perform without risking harm both to herself and her unborn child. When she told her supervisor of her concern in this regard, he simply snickered. After further discussion, it became clear to plaintiff that he was unconcerned about this problem so she informed her supervisor that she was quitting. On the termination interview form, Meyer checked the box next to the designation "unable to perform assigned duties" and added that her job duties had been changed. Her employer's representative stated on the form that she had resigned because of her pregnancy.

On March 20th, Meyer filed a complaint with the Equal Employment Opportunity Commission (EEOC) charging that defendant violated Title VII of the Civil Rights Act of 1964[1] by discharging her from employment because of her sex. She received a "Right to Sue" letter from the EEOC in August and thereafter commenced this action. Despite the testimony of Meyer's supervisor to the effect that only plaintiff's office location was changed, the district court found that the woman hired to replace plaintiff was assigned only clerical duties, leaving plaintiff with the heavier warehouse work. Not only were plaintiff's duties altered but she was denied the opportunity, given to other temporarily disabled workers, of doing lighter work until she recovered from the disability. The court concluded that if she had continued working for defendant she would have faced a reasonable probability of injury to herself and her unborn child. Plaintiff was therefore forced to resign because of this intolerable situation. The district court ordered judgment for the plaintiff in the amount of $23,620 in back pay, $3,500 in attorney fees, and an order enjoining defendant from engaging in this unlawful practice in the future. From this judgment, defendant appeals. Defendant appeals on two grounds: (1) the trial court committed error in holding that plaintiff was constructively discharged; and (2) the injunctive relief granted by the trial court was improper. We affirm the district court decision in part and reverse in part.

A prima facie case of employment discrimination involving discharge from employment consists of four elements. Plaintiff must prove by a preponderance of the evidence that (i) she is a member of a protected class, (ii) she was qualified for the job from which she was discharged, (iii) she was discharged, and (iv) after the discharge the employer filled the position with a non-minority. *Marks v. Prattco, Inc.*, 607 F.2d 1153, 1155 (5th Cir. 1979). Evidence at trial demonstrated that Meyer was a member of a protected class, qualified for the job from which she was discharged, and replaced by a non-minority;[2] these issues are not dis-

---

1. 42 U.S.C. § 2000e et seq.

2. This Court has stated, "[C]ompany rules which single out certain subclasses of women for disparate treatment constitute unlawful sex discrimination." *Harper v. Thiokol Chemical Corp.*, 619 F.2d 489, 492 (5th Cir. 1980). Therefore, the fact that plaintiff was replaced by a non-pregnant woman has no bearing on her ability to maintain this action.

puted here. Evidence was also presented to the effect that plaintiff was constructively discharged and it is this court finding that defendant challenges as clearly erroneous.[3] Constructive discharge will be found where an employer has made working conditions so difficult that a reasonable person would feel forced to resign. *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir. 1980). Defendant argues that a reasonable person in this situation would not have felt compelled to resign but instead would have questioned the employer as to the specific work to be performed in the warehouse. Plaintiff's comments after her supervisor's order to move to the warehouse clearly demonstrate that she did question the nature of her new duties. Plaintiff's response to the order clearly indicated to the supervisor the assumption that she would be required to do much heavier work. The court found that instead of correcting her impression about the change of her duties, the supervisor merely snickered at her concern about the risk to herself and her unborn child. Furthermore, when plaintiff commented that she did not believe her supervisor capable of such action, another clear indication of her assumptions about the new job duties, he said in effect that it did not bother him.[4] Certainly, a reasonable person would leave when presented with such a situation. The supervisor had confirmed plaintiff's assumptions about the new job duties. The court's finding that plaintiff was constructively discharged is supported by the evidence and so will not be disturbed by this court. Rule 52(a), F.R.Civ.P.

■■ Once plaintiff has demonstrated a prima facie case of employment discrimination, defendant must present evidence of a legitimate reason for the employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The Supreme Court clarified this burden in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981): "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. Defendant argues that even if plaintiff's job duties were changed, she has not proven that she was compelled to resign because she had the alternative of taking an immediate maternity leave. She then would have been able to return to work after the birth of her child. Defendant contends that because she rejected this "much less drastic" alternative, she failed to demonstrate constructive discharge. This contention is totally fallacious. Defendant has not articulated a legitimate reason for its action and therefore has not rebutted plaintiff's prima facie case.

---

3. Specifically, defendants challenge three findings of fact:

25. Despite the testimony of York and Luther to the contrary Plaintiff's job duties were changed as of January 10, 1979, since the paperwork and clerical duties were to be handled by Ellie Tackett, leaving Plaintiff with only heavier and more difficult work that plaintiff would have been unable to perform without risking injury to herself or her unborn child.
26. The warehouseman's duties that Plaintiff was faced with including (sic) climbing on the construction site, locating and lifting equipment and inventorying equipment.
27. Had Plaintiff performed the work York was reassigning her to, Plaintiff would have faced a reasonable probability of injury to herself or her unborn child. This probability of injury was an intolerable situation, and Plaintiff was compelled to resign involuntarily.

4. The relevant portion of the district court's findings of fact follows:

On January 10, 1979, Plaintiff arrived at work and York, upon meeting her, told her to "clear out your desk" and that they were "moving you to the warehouse." Shortly thereafter, when Plaintiff questioned York as to what she was going to do, he replied "you're going to work with Ed and Phil." Plaintiff replied that she could not do that without harming herself or her unborn baby, while York stood by snickering. Plaintiff remarked that she did not think York would do that, where upon York remarked "What?"

Plaintiff then said "Jim, go home and sleep on it tonight and see if you wake up with a clear conscience."

York said "I have."

Plaintiff then said "What more do I say? I'm going . . . you know, fix up my papers because I'm going home."

▪ Defendant also appeals the district court's order enjoining the corporation from "engaging in the stated unlawful employment practice." Specifically, defendant charges that the language is vague and hence the injunction is either impermissibly broad or unnecessary. In determining whether the injunction is vague, we are guided by the language of Rule 65(d) of the Federal Rules of Civil Procedure: "Every order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained ..." A general injunction which in essence orders a defendant to obey the law is not permitted. "This command of specificity is a reflection of the seriousness of the consequences which may flow from a violation of an injunctive order." *Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895, 897 (5th Cir.), *cert. denied*, 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978). The specificity requirement is not unwieldy, however. An injunction must simply be framed so that those enjoined will know what conduct the court has prohibited. *International Longshoremen's Association v. Philadelphia Marine Trade Association*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967). In the case at bar, the district court judgment provided the specificity necessary to comply with Rule 65(d). The judgment recited that defendant violated Title VII by constructively discharging plaintiff when she was pregnant. In particular, the judgment stated that defendant failed to treat plaintiff in the same manner as other temporarily disabled workers who were given the opportunity to perform light or limited work during the period of disability. This statement adequately informs defendant of the conduct prohibited in the future.

5. Defendant also contends that the injunction is unnecessary if designed only to address the dispute at issue here. Clearly the injunction is not focused solely on defendant's conduct toward plaintiff, since plaintiff does not seek reinstatement in this case.

6. 42 U.S.C. § 2000e–5(g) provides in relevant part:

▪ Defendant makes the further argument that if the injunction is construed as enjoining discrimination against other individuals, it is impermissibly broad.[5] As authority, we are cited to a Tennessee district court opinion for the broad proposition that in the absence of demonstration of a general policy or other specific acts of discrimination, injunctive relief encompassing nonparties is improper. *Grindstaff v. Burger King, Inc.*, 494 F.Supp. 622, 625 (E.D. Tenn.1980). Defendant's reliance on this case is misguided, since it ignores the essential nature of Title VII suits. An individual who brings a Title VII suit "takes on the mantel of the sovereign," *Jenkins v. United Gas Corp.*, 400 F.2d 28, 32 (5th Cir. 1968). The clear purposes of Title VII are to eliminate discrimination and recompense those who have suffered from it. This Court has said:

> When, as frequently is the case, the alleged discrimination has been practiced upon the plaintiff because he is a member of a class that is allegedly discriminated against, the court trying a Title VII suit bears a special responsibility in the public interest to resolve the employment dispute by determining the facts regardless of the individual plaintiff's position, *Bowe v. Colgate-Palmolive Company*, 7 Cir., 1969, 416 F.2d 711, 715, for "[w]hether in name or not, the suit is perforce a sort of class action for fellow employees similarly situated." *Jenkins v. United Gas Corporation*, 5 Cir., 1968, 400 F.2d 28, 33.

*Hutchings v. United States Industries, Inc.*, 428 F.2d 303, 310 (5th Cir. 1970). The language of the Act empowers the courts to grant a wide variety of relief to combat discriminatory practices.[6] Of course, a

"(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer,

court determination that an employer has intentionally engaged in an unlawful employment practice does not necessitate either injunctive relief or a back pay award.[7] The trial court must balance the equities and arrive at a fair result consistent with Title VII's goals of eliminating discrimination. *Schaeffer v. San Diego Yellow Cabs, Inc.,* 462 F.2d 1002, 1006 (9th Cir. 1972).

Injunctive relief which benefits non-parties may sometimes be proper even where the suit is not brought as a Rule 23 class action. The Ninth Circuit recognized this fact in *Gregory v. Litton Systems, Inc.,* 472 F.2d 631 (9th Cir. 1972), and we approve it here. However, in the instant case, as in *Gregory,* we are faced with facts which do not warrant an injunctive remedy because plaintiffs sought prospective relief in neither case. The court in *Gregory* noted that there are many cases where injunctive relief designed to assist a party will accidently assist persons not before the court. This is not a case where injunctive relief need be designed for a just disposition of the action. That portion of the judgment granting injunctive relief is therefore reversed.

AFFIRMED IN PART and REVERSED IN PART.

---

employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate."

7. Relief under Title VII is conditioned on a finding that the employer "intentionally engaged" in the unlawful employment practice.

We have interpreted that phrase to mean that the discrimination must be deliberate rather than accidental. .*Local 189, United Papermakers v. United States,* 416 F.2d 980, 996 (5th Cir. 1969). *cert. denied,* 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970).