Barbara Crum NEALE, Plaintiff,

v.

**Denis DILLON, District Attorney of the County of Nassau, in his official capacity, Defendant.**

No. CV 80–0080.

United States District Court, E. D. New York.

March 25, 1982.

Janice Goodman, New York City, for plaintiff.

James M. Catterson, Jr., Sp. Counsel to Nassau County, Port Jefferson, N. Y., for defendant; Patrick Breen and William Pauley, III, of counsel.

## MEMORANDUM OF DECISION

GEORGE C. PRATT, District Judge:

Plaintiff Barbara Crum Neale, a former assistant district attorney (ADA) in the Nassau County district attorney's office, brought this Title VII action claiming that, during her tenure as an ADA, she was discriminated against because of her sex, in violation of 42 U.S.C. § 2000e–2. The specific acts of discrimination alleged are: (1) that although plaintiff performed the duties of a deputy bureau chief, she did not receive the salary commensurate with that position; (2) that although she had requested and was qualified for a promotion to deputy bureau chief of the district court bureau, District Attorney Denis Dillon appointed a male to fill that position; and (3) that after having served in a supervisory capacity for several years, she was transferred to the appeals bureau in a non-supervisory capacity. She further alleges that the transfer to the appeals bureau was a retaliatory measure taken after she had indicated

to one of Dillon's assistants that she contemplated bringing a lawsuit. Finally, she claims that a combination of circumstances made her position intolerable and that, therefore, the district attorney's actions amounted to a constructive discharge based on discriminatory reasons in violation of 42 U.S.C. § 2000e–2(a)(1).

Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) and the New York State Division of Human Rights on October 5, 1978. On December 4, 1979, plaintiff received a right-to-sue letter from the EEOC. She then commenced this action which was initially assigned to Judge Nickerson. In July, 1981, the case was reassigned to the undersigned who tried it, sitting without a jury, on ten separate dates between October 23 and November 23, 1981. Counsel for plaintiff and defendant submitted post-trial memoranda in December, 1981.

The court has carefully reviewed the testimony of the 18 witnesses who testified at trial, the exhibits admitted into evidence, and the arguments made by counsel, both at trial and in their pretrial and posttrial briefs. This memorandum constitutes the court's decision in accordance with FRCP 52.

## I. *UNCONTESTED FACTS*

Certain facts are uncontested, although as in any lawsuit counsel disagree as to the proper interpretation to be given those facts. Barbara Neale was employed as an ADA in the Bronx County district attorney's office from summer, 1972 to January, 1975 when she was hired in Nassau County by defendant Dillon, then a newly elected district attorney. For a period of two months, until March 14, 1975, she was assigned to the appeals bureau, and was then transferred to the county court bureau, where she served as a trial attorney in that bureau for a year.

In March, 1976, Neale was given the position of "trial supervisor" in the district court bureau. Her duties, as described by defendant Dillon, were to train, counsel, assist, and evaluate the young ADAs in that bureau. Neale served as a trial supervisor for approximately two years, during which time she was assigned a private office. She received no unfavorable written evaluations of her performance while she was a trial supervisor, and during 1977 she received pay increases totaling approximately $8,500.

As trial supervisor, Neale was directly responsible to the bureau chief of the district court bureau. At that time the district court bureau did not have a deputy bureau chief. In the summer of 1977, bureau chief John Kase requested that Neale be given the title of deputy bureau chief and the salary commensurate with the position. The request was denied.

Plaintiff began an approved maternity leave on March 27, 1978. On April 18, 1978, Ronald Schoenberg was appointed to the position of deputy bureau chief of the district court bureau, a position Dillon decided to create sometime in early 1978. Neale's office was turned over to Schoenberg, and all of Neale's property was removed from the office and left in a shopping cart in the hall. There was no evidence that Dillon was aware of this incident at the time it occurred. Plaintiff learned of this change through telephone calls from ADAs in the office, but received no official communication concerning it. When Neale returned to work on May 8, 1978, she and the district court bureau chief, Patrick Guiney, searched together for an office for her and eventually displaced one of the young ADAs from his desk. At the beginning of June, Neale was told that she was to be transferred to the appeals bureau in a nonsupervisory position. She claimed that her position was intolerable and that she had no alternative but to resign, which she did, in writing, on June 14, 1978.

It should be noted that counsel for defendant did not attempt to defend the manner in which plaintiff was displaced from her office. He admitted in his opening statement that this particular treatment of Neale was "tacky" and expressed defendant's regret that it had occurred. He denied, however, that it in any way constituted discrimination on the basis of sex.

Certain facts are contested by the parties. For the purpose of clarity, the court will treat separately each of the allegedly discriminatory acts that plaintiff claims entitle her to relief.

## II. DISCRIMINATION CLAIMS

*Plaintiff's Claim for Equal Pay.*

Plaintiff contends that during the two year period that she held the position of trial supervisor of the district court bureau, she performed the duties of a deputy bureau chief but did not receive a salary commensurate with that position. She claims that this disparity was due solely to the fact that she was a woman. To lend credence to her claim, she points to the fact that from January, 1975, when Dillon took office, until May, 1980, she was the only female in the district attorney's office with a supervisory title. Further, Neale states that she did not receive the salary that the male deputy bureau chiefs in other bureaus received during the period Neale served as trial supervisor.

■ The Supreme Court recently reaffirmed the fact that a claim of discrimination in compensation may be brought under either Title VII or the Equal Pay Act. *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). Although the court in *Gunther* addressed itself to the issue of whether the four affirmative defenses of the Equal Pay Act are incorporated into Title VII, an issue not directly before the court in this case, there can be no question that plaintiff, in alleging that she performed work equal in terms of skill, effort, and responsibility to the higher paid position, presents a claim under Title VII for wage discrimination due to sex.

■ However, at trial, plaintiff did not establish a case of wage discrimination. Since the Equal Pay Act, 29 U.S.C. § 206(d), and Title VII, 42 U.S.C. § 2000e–2(a)(1) both prohibit wage discrimination, courts have not hesitated to rely on decisions interpreting the Equal Pay Act when they are considering equal pay claims asserted under Title VII. *See e.g., Gunther v. County of Washington*, 623 F.2d 1303, 1309 (CA9 1979), *aff'd, County of Washington v.* *Gunther, supra; Hays v. Potlatch Forests, Inc.*, 465 F.2d 1081, 1083 (CA8 1972). To establish a case under the Equal Pay Act, the plaintiff must show that workers of one sex were paid more than workers of the opposite sex for equal work. *See Katz v. School District of Clayton, Missouri*, 557 F.2d 153, 156 (CA8 1977). It is not necessary for an equal pay claim that the work be formally required, but the lower paid equal work must actually be performed with the knowledge and acquiescence of the employer.

At trial, Neale and several of her witnesses testified that during her tenure as trial supervisor she in fact performed the duties of a deputy bureau chief in that she trained and counseled ADAs, developed written training material, evaluated work performance, and acted as bureau chief in the bureau chief's absence. The court finds this testimony credible, and does not disagree that at least during some of the period when she was trial supervisor Neale performed the administrative duties associated with the position of deputy bureau chief.

However, the court also finds credible the testimony of defendant Dillon that, if she was performing the duties of a deputy bureau chief, it was not at his request and was without his approval or acquiescence. Dillon testified that he had appointed plaintiff as trial supervisor for the purpose of training and counseling ADAs and evaluating their performance. He testified that he did not request that she take on the administrative and management duties associated with the job of deputy bureau chief, and further testified that if she was performing those duties, that might explain why she was not, in his opinion, satisfactorily performing the specific duties of a trial supervisor. R. at 1053–54. When Dillon learned that Neale was performing administrative duties, he informed her bureau chief, John Kase, that she was not there to help him with his administrative burdens, but rather to "get to the courtrooms, [and] help the young assistant DA." R. at 1053. The court finds that Dillon neither assigned to Neale the duties of a deputy bureau chief nor acquiesced in her performance of them.

Plaintiff cannot establish wage discrimination under Title VII without a showing that defendant Dillon at least acquiesced in her performance of the duties of the higher paying position. *Katz, supra.* There was testimony that Neale assumed the duties of a deputy bureau chief with the acquiescence and approval of the two bureau chiefs under whom she served, John Kase and Patrick Guiney. However, this did not constitute acquiescence by Dillon. Rather, the testimony of Dillon, as well as that of Patrick McCloskey, the ADA who assisted Dillon in personnel matters, indicates that neither Dillon nor McCloskey wanted Neale to perform those duties and, in retrospect, perceived the fact that she did perform them as reflecting poorly on Kase and Guiney rather than favorably on Neale. Both Dillon and McCloskey testified that the fact that Kase and Guiney allowed Neale to assume some of their duties detracted from her role as trial supervisor and, as indicated above, Dillon told Kase that he did not want Neale to be doing Kase's job for him. Therefore, plaintiff's claim for equal pay is without merit.

*Denial of Promotion to Deputy Bureau Chief.*

Neale alleges that Dillon's failure to give her the salary and title of deputy bureau chief and his appointment of Ronald Schoenberg to the position while she was on maternity leave were decisions based on the fact that she is a woman and, therefore, were in violation of Title VII. To support this claim, plaintiff presented at trial a number of witnesses who testified that she had performed the duties of a deputy bureau chief during her tenure as trial supervisor, that she was qualified for the position, that she was respected in the district court bureau, and that she had applied for the position but had been told there was no position of deputy bureau chief in the district court bureau.

As further evidence that the denial of the promotion constituted sex discrimination, Neale presented testimony concerning various incidents affecting others in the district attorney's office which plaintiff contends show a pattern and atmosphere of sex discrimination. Among these incidents were (1) questioning of a woman applicant during an interview concerning her child care arrangements; (2) a remark by ADA McCloskey concerning the size of the female ADAs' breasts; and (3) remarks attributed to Dillon and others in the office that women do not make good trial attorneys. To prove further this atmosphere of discrimination, plaintiff offered the fact that Ronald Schoenberg was appointed to the position of deputy bureau chief while plaintiff was away from the office on maternity leave.

■ In a Title VII lawsuit, a plaintiff must first establish a prima facie case of sex discrimination. She can do this by showing that she applied for the available position, that she was qualified for the position, and that she was rejected under circumstances which give rise to an inference of sex discrimination. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). At trial, Neale did this by presenting evidence that she had performed the duties of deputy bureau chief, that people perceived her as competent, that she had requested to be promoted to the newly established position, and that she was rejected and a male was promoted to the position while she was on maternity leave.

At this point the burden shifted to defendant to articulate non-discriminatory reasons for his actions. To counter the testimony concerning a sexist attitude toward the female ADAs, there was credible testimony by ADA McCloskey that it is a hiring policy of the district attorney's office to seek qualified and competitive minorities and women to fill ADA positions. R. at 668. McCloskey further testified, and the court finds as a fact, that when Dillon took office in 1975 there were two women ADAs out of a total of 94 in the district attorney's office, but that by November, 1981, there were 21 female ADAs out of a total of 112. Approximately 36 female ADAs had been hired since 1975, and approximately 14 women had been offered positions but had turned them down. R. at 672–73.

With respect to the appointment of Schoenberg, McCloskey and Dillon testified that in early 1978 Dillon decided to focus his attention on improving the district court bureau, a decision which led to the appointment of Schoenberg in April. There was testimony by Harvey Levinson, McCloskey, and Dillon concerning Schoenberg's qualifications for the position of deputy bureau chief. Dillon testified that Schoenberg had a good reputation in the office, that he was someone the young ADAs could look up to as a fine trial attorney, and that his teaching background would add to his effectiveness. R. at 1059. Schoenberg's testimony indicated that at the time of his appointment to the position of deputy bureau chief he had been an ADA for seven years, during which time he had tried a variety of cases, including a number of major felony cases. He had also taught criminal law courses at C.W. Post College and Adelphi University. R. at 982–87.

With respect to the failure to appoint Neale to the position, there was testimony by McCloskey and Dillon, discussed above, that if Neale was performing the duties of a deputy bureau chief it was not what she had been assigned to do. There was also testimony by Dillon and McCloskey that it gradually came to their attention in late 1977 or early 1978 that Neale was not performing her duties as trial supervisor to their satisfaction.[1] R. at 1053–54.

Thomas Feinman and Fred Annibale, former ADAs in the district court bureau, testified that while Neale was trial supervisor, cliques developed in the bureau, and that certain ADAs were favored by Neale over others. While some of the testimony by Annibale and Feinman may have been exaggerated, the court finds their testimony to be for the most part credible. They testified that there were frequent coffee klatches in Neale's office, and that on at least one occasion Neale and some of the ADAs that Feinman and Annibale describ-

ed as "favorites" spent a work day at a festival in Manhattan. Feinman and Annibale also testified that Neale exercised favoritism in assignments.[2]

Feinman testified that Neale had a divisive effect in the office. He said that some of the ADAs referred to the division as Team A and Team B. According to Feinman, Team A (of which he was not a part) received preferential treatment and met on a daily basis in Neale's office for coffee and cake. Feinman also testified that the A team received preference in assignments, and that he personally had never received any assistance or training from Neale. R. at 616–23. Annibale's testimony was similar to that of Feinman.

■ It is not necessary for a defendant in a Title VII case to prove by a preponderance of the evidence that the reasons for his or her actions were non-discriminatory. It is sufficient that the defendant present reasonably clear and specific reasons for the action. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254–58, 101 S.Ct. 1089, 1094–96, 67 L.Ed.2d 207 (1981). The burden then shifts back to the plaintiff to show that defendant's stated reasons are pretextual. *Id.* 101 S.Ct. at 1095.

On her rebuttal case, plaintiff attempted to show that Dillon's stated reasons for his promotion of Schoenberg rather than Neale were not the true reasons. Neale testified that it was not true that she was inaccessible to the young ADAs, as defendant alleged, and that her indicia of authority, namely, a private office and a beeper, showed that Dillon acquiesced in her performance of deputy bureau chief duties. She further testified that Dillon had never told her either orally or in writing that he was displeased with her work. Several other witnesses testified that plaintiff performed her job more than satisfactorily.

---

1. There was also testimony concerning Neale's ineffectiveness as a trial attorney. Although the court finds this testimony credible, it is not, strictly speaking, relevant for a determination of whether Neale was qualified for a supervisory position.

2. Dillon testified that he had heard the complaint concerning favoritism in assignments before the decision was made to appoint Schoenberg to the position of deputy bureau chief, but did not determine that it was well-founded until after the appointment. R. at 1090.

**1388**

■ The court has examined all of the evidence and determines that plaintiff has not met her burden of proving that defendant's promotion of Schoenberg rather than Neale to deputy bureau chief was an act of discrimination based on sex. It became clear as the trial progressed that although some people thought Neale was doing a good job as trial supervisor, and was qualified for the position of deputy bureau chief, a substantial number of people not only believed that she was a poor trial supervisor and that she was unqualified for the promotion, but also viewed her influence on the bureau as harmful.

Dillon's testimony was credible that in late 1977 he became aware that there were problems in the district court bureau and that he and Patrick McCloskey turned their attention to improving the situation there. When Dillon decided to create the position of deputy bureau chief for the district court bureau, and to appoint Schoenberg rather than Neale, he acted without discriminatory purpose or effect. Plaintiff's actual performance in that bureau was sufficient reason to pass her over for the position.

Plaintiff argues that in stating vague criteria for what he was looking for in a deputy bureau chief, Dillon was masking his true reasons for not promoting Neale. Dillon testified that in considering candidates for the position he wanted someone who was respected by the ADAs and who had a good reputation as a trial attorney so that the ADAs would have a role model. In addition, he testified that he was interested in someone with a teaching background. R. at 1059.

Neale claims that these criteria, in addition to being vague and nonspecific, stacked the deck against women in general because few women had been assigned to the county court and major offense bureaus where one could gain experience and a reputation as a good trial lawyer. Plaintiff further argues that the fact that Dillon did not have a standardized system for promotion or written job criteria, but, rather, relied upon the recommendations and suggestions of his male administrative and executive staff, further shows that his action with respect to Neale was intentional discrimination.

The court does not agree. While it is true that the use of vague criteria for hiring or promotion, plus statistics which show that the minority is under-represented in the hiring or promotion pool, can be used to show discrimination, *Muller v. U.S. Steel*, 509 F.2d 923, 927–28 (CA10 1975), the court does not find that the criteria stated by Dillon for the position of deputy bureau chief were impermissibly vague, or that they were aimed at excluding women. Although it might be desirable for the district attorney's office to have a more formal structure with regard to promotion criteria, the testimony in this case showed that Dillon chose the person he thought was most qualified for the job. Title VII does not require that minorities or women get preferential treatment, *Texas Department of Community Affairs v. Burdine, supra*, 101 S.Ct. at 1096, but only that the employer not use discriminatory criteria to choose among equally qualified candidates. *Id.* 101 S.Ct. at 1097. The defendant did not have to show that the decision-making process he adopted, in addition to serving his legitimate goal of improving the district court bureau, maximized the promotion of women. *See Furnco Construction Corporation v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978).

■ Dillon's testimony that the criteria he outlined were important for the position of deputy bureau chief was credible, and, in addition, the court cannot ignore the fact that while Neale may have made a prima facie showing that she was qualified for the position of deputy bureau chief, this showing was diminished by the credible testimony of those who seriously questioned her competency in a supervisory position. The court cannot ignore the credible testimony that plaintiff had a divisive influence on the district court bureau and that when Dillon or McCloskey had asked her about the performance of certain ADAs whom she was supposed to be observing in the courtroom, she had no knowledge of their abilities. R. at 1052–53. Defendant cannot be faulted for desiring to upgrade the performance of the district court bureau by appointing a person he considered qualified for the posi-

tion, especially when he was justified in believing that Neale was not qualified for the position. Title VII does not require that an employer promote a less qualified female rather than a more qualified male. *Texas Department of Community Affairs v. Burdine, supra*, 101 S.Ct. at 1096.

The court takes note of plaintiff's argument that any testimony by Dillon that he relied on the Zinn report, *see* defendant's exhibit Q, in making his decision to promote Schoenberg, is pretextual. The investigation of the workings of the district attorney's office which resulted in the Zinn report was not initiated until April 17, 1978, and Schoenberg was appointed on April 18, 1978. Therefore, Dillon could not have considered the report when making the promotion. While the Zinn report tends to confirm Dillon's earlier evaluations and strengthens the validity of his judgment, the court has not considered it as a direct factor in Dillon's determination to promote Schoenberg. While grounded perhaps in less compelling evidence than the Zinn report, Dillon's reasons for preferring Schoenberg to Neale were nonetheless non-discriminatory.

Finally, plaintiff argues that the manner in which the promotion of Schoenberg was handled was also discriminatory. She claims that no man in the district attorney's office ever had his possessions placed in the hall in a shopping cart or had to hunt around for a desk that was vacant. Defendant admitted at the start of trial that the manner in which plaintiff was moved from her office was "tacky".

After hearing the trial testimony, the court finds that this incident, while thoughtless and inconsiderate, was not discriminatorily motivated. Rather, Schoenberg had to move into Neale's office, and Neale was not present to remove her possessions. The fact that Neale's absence was due to maternity leave is irrelevant. While the court does not approve of defendant's action here, it cannot find that this incident was the result of anything other than poor planning on the part of those in charge of job and office assignments in the district court bureau.

For the reasons stated, Neale's claim that Dillon's failure to promote her to deputy bureau chief constituted discrimination because of sex in violation of Title VII is without merit, and judgment should be entered for defendant on this claim.

*Plaintiff's Transfer to the Appeals Bureau.*

Neale claims that her transfer to the appeals bureau in early June, 1978 constituted discrimination in violation of Title VII for two reasons. First, she argues that when men were transferred from supervisory positions they were transferred to other supervisory positions rather than to non-supervisory roles. She, on the other hand, had started out in appeals and then after two years in a supervisory position was transferred back to the bureau in which she had started.

Plaintiff's second argument is that the transfer was made in retaliation for her statement to one of Dillon's assistants that she was considering suing Dillon for sex discrimination, because he had in effect stripped her of her position and duties of trial supervisor, and had failed to promote her to deputy bureau chief.

■ The court finds both of plaintiff's contentions to be without merit. With respect to her claim that she was the only ADA to be transferred from a supervisory to a non-supervisory position, there was conflicting testimony. While it is true that certain ADAs, for example, John Kase, had been transferred from one supervisory to another supervisory position when Dillon was not pleased with the results of their work, there was also testimony, not contradicted by plaintiff, that there had been 28 transfers from supervisory to non-supervisory positions since 1976. R. at 695–96. In most, if not all, cases those transfers involved men. The court cannot find that Neale's transfer to the appeals bureau as a non-supervisory ADA constituted different treatment than that given to men who were supervisors.

■ Similarly, plaintiff's claim that the transfer was made in retaliation for her statement that she was considering a lawsuit must fail. The court accepts as credible Dillon's testimony that he did not know

that Neale had any intention of suing him until after he had made the decision to transfer her. R. at 1064. In addition, when he did hear about a possible lawsuit it was from his public information officer who told him gleefully that Neale was not going to sue. R. at 1064–65. Therefore, Dillon could not have based his decision to transfer Neale to the appeals bureau in a non-supervisory position on the fact that she contemplated a lawsuit against him. The court concludes that neither discriminatory intent nor a retaliatory purpose motivated Dillon's decision to transfer Neale to the appeals bureau in a non-supervisory capacity.

*Constructive Discharge.*

Although plaintiff resigned her position, she claims she was the victim of a discriminatory discharge in violation of 42 U.S.C. § 2000e–2(1). She argues that the cumulative effect of Dillon's actions in (1) failing to promote her to deputy bureau chief, (2) promoting Ronald Schoenberg instead, (3) depriving her of her office and placing her possessions in a shopping cart in the hall, (4) leaving her without an office or responsibility after she returned from maternity leave, and (5) transferring her to the appeals bureau, the bureau in which she had begun her career at the Nassau County district attorney's office, together forced her to resign her position and therefore constituted constructive discharge.

Constructive discharge occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign. For example, in *Meyer v. Brown & Root Construction Company*, 661 F.2d 369, 372 (CA5 1981), the court found that where a female employee who was several months pregnant was transferred to a warehouse job requiring possible heavy labor, the transfer constituted a constructive discharge. *Id.* at 372. Neale claims that her position in the office after the events of April and May of 1978 had occurred was untenable, and that this situation was induced by the defendant in the hope that she would resign.

Again, the court finds that Neale's claim must fail. It is true that Neale may have felt embarrassed by the fact that she was being transferred to the appeals bureau after she had occupied a supervisory position for two years. However, other ADAs had been transferred from supervisory to non-supervisory positions without claiming that they had been constructively discharged. Neale testified that she considered the appeals bureau to be lacking in prestige; the view was not universally held, however, because there was also testimony that many ADAs considered the appeals bureau to be very prestigious. R. at 717–22.

A claim of constructive discharge must be supported by more than the employee's subjective opinion that his or her position has become so intolerable and difficult that he or she must resign. *See, e.g., Nolan v. Cleland*, 482 F.Supp. 668, 672 (N.D.Cal.1979). The court does not find that Neale's situation had become so intolerable that a reasonable person would feel forced to resign. *Meyer, supra,* 661 F.2d at 372. This is not a case like *Young v. Southwest Savings & Loan Association*, 509 F.2d 140 (CA5 1975), where the plaintiff, who was an athiest, was forced to attend prayer meetings as part of her job, or *Meyer, supra,* where the working conditions imposed by the employer could have endangered the health of the plaintiff or her unborn child. In this case, transfers from one bureau to another were frequent; most ADAs had experienced several. Although Neale was transferred to a non-supervisory position, the transfer was at no loss of pay. The court finds that if she thought her position intolerable it was due to her own perception that the promotion of Schoenberg to deputy bureau chief and her transfer to the appeals bureau in a non-supervisory position were damaging to her prestige. While understandable, particularly in the context of the manner in which she learned of Schoenberg's appointment, and the clumsiness of her superior's removing her property from her office, her embarrassment does not constitute constructive discharge.

*Claim Under New York Executive Law § 290 et seq.*

Plaintiff also claims she is entitled to damages for pain and suffering pursuant to

N.Y. Exec. Law § 297. However, since the court has found that plaintiff has failed to sustain her claims of discrimination, it need not consider any questions of damages. *See Batavia Lodge No. 196, Loyal Order of Moose v. New York State Division of Human Rights*, 35 N.Y.2d 143, 359 N.Y.S.2d 25, 316 N.E.2d 318. *Cf. Cullen v. Nassau County Civil Service Commission*, 53 N.Y.2d 492, 442 N.Y.S.2d 470, 473, 425 N.E.2d 858 (Ct. App.1981).

## CONCLUSION

Although the court concludes that plaintiff has not shown by a preponderance of the evidence that defendant Dillon's actions constituted sex discrimination in violation of Title VII, this decision should not be construed as judicial approval of some of the practices reported to have occurred in the district attorney's office. Remarks concerning the size of women attorneys' breasts, and hints that they are used as a hiring criteria, even if made in jest, have no proper place in a professional working environment. Similarly, a statement concerning a job applicant's physical appearance or ethnic background has no place in an interview. However, the fact that these isolated incidents may have occurred, while unfortunate, does not constitute discrimination in violation of Title VII. The fact remains that Neale failed to prove that defendant's treatment of her was a result of her being a woman.

For the reasons stated, plaintiff's claim is dismissed and the clerk is directed to enter judgment for defendant.

SO ORDERED.