Eleanor LOMBARDO

v.

A.W. OPPENHEIMER, et al.

Civ. No. H–85–781 (PCD).

United States District Court,
D. Connecticut.

Feb. 23, 1987.

Francis C. Vignati, Francis C. Vignati, P.C., East Hartford, Conn., for plaintiff.

Robert Vacchelli, Richard M. Sheridan, Newington, Conn., for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

This is an action arising under 42 U.S.C. § 1983, alleging a violation of plaintiff's rights under the fifth and fourteenth amendments.[1] Plaintiff alleges that defendants' public statements, coupled with her reassignment to a "boring position, not comparable with her former position," and defendants' mistreatment after her reinstatement amounted to working conditions so intolerable as to constitute a constructive discharge in violation of her rights of due process. In addition, she claims defendants' actions caused her public embarrassment, amounted to defamation of her character, and prevented her from obtaining other employment.

*Facts*

Plaintiff was employed as a clerk with the State of Connecticut Division of Special Revenue ("DOSR"). Defendants, A.W. Oppenheimer and William T. Drakeley, are, respectively, Executive Director and Deputy Executive Director of DOSR.

On December 1, 1983, plaintiff was accused of stealing and recashing lottery tickets. She was suspended without pay the following day. Plaintiff was arrested and charged with two counts of sixth degree larceny on January 12, 1984. The

---

**1.** Plaintiff's fifth amendment claims are dismissed. *Fifth amendment rights may not be* asserted against the state or its officials.

next day, she was fired. Following grievance proceedings, plaintiff was ordered reinstated with full back pay and benefits. The criminal charges were nolled. Plaintiff returned to work on June 4, 1985. Because her original job no longer existed, she was assigned to a different position within the Licensing and Integrity Unit. Soon after plaintiff returned to work, Oppenheimer allegedly insinuated to the news media that she was unreliable and untrustworthy. On August 1, 1985, plaintiff terminated her employment, claiming that the working conditions were intolerable.

Plaintiff sued Oppenheimer and Drakeley, in their individual and official capacities, and the DOSR. She alleges wrongful discharge, constructive discharge, and that the grievance proceedings (which resulted in her reinstatement) were arbitrary and unfair. Defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6). On March 19, 1986, all counts were dismissed. However, the constructive discharge count was dismissed without prejudice with leave to amend. Plaintiff filed an amended complaint on April 2, 1986. Defendants now move for summary judgment. Fed.R.Civ.P. 56.

*Summary Judgment*

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The non-moving party "may not rest upon mere allegations of denials of his pleadings but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

*Discussion*

Plaintiff alleges that her employment contract created a property right by guar-

anteeing that she would not be demoted or dismissed except for "just cause." Complaint at ¶ 10. Defendants' actions, allegedly constituting a constructive discharge, are claimed to have deprived her of that right without due process of law.

A. *Claims Under 42 U.S.C. § 1983*

In any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980).

There is no dispute that defendants were acting under color of state law. Defendants base their motion on the absence of any evidence that their conduct amounted to a constructive discharge and that plaintiff voluntarily resigned. "A finding of constructive discharge in violation of § 1981 of Title VII requires that the trier of fact be 'satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Martin v. Citibank N.A.*, 762 F.2d 212, 221 (2d Cir.1985), quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983).

A plaintiff alleging constructive discharge must therefore prove two elements: deliberateness of the employer's action, and intolerability of the working conditions.

Deliberateness exists only if the actions complained of "were intended by the employer as an effort to force the employee to quit."

Intolerability of working conditions ... is assessed by the objective standard of whether a reasonable person in the em-

ployee's position would have felt compelled to resign."

*Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), quoting *EEOC v. Federal Reserve Bank of Richmond*, 698 F.2d 633, 672 (4th Cir.1983), *rev'd on other grounds*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). An employee's subjective opinion that her working conditions are intolerable is not sufficient to establish constructive discharge. *Pena*, 702 F.2d at 325; *Nolan v. Cleland*, 482 F.Supp. 668, 672 (N.D.Cal.1979).

Plaintiff cites the following in support of her claim: (1) her new job involved less responsibility than her previous position. She no longer dealt with the public, no longer had her own phone, no longer handled cash, rarely handled checks,[2] and performed some duties performed by temporary workers. Plaintiff's Affidavit at ¶¶ 32, 34, 36 and 37; (2) defendants acted coldly toward her and would not look at or speak to her. Plaintiff's Affidavit at ¶¶ 39 and 40; and (3) her new job was monotonous and demeaning in view of her eight and one-half years of experience. Plaintiff's Affidavit at ¶ 33.

**B.** *Job Responsibility*

▇ Mere reduction or change in job responsibility does not constitute constructive discharge. *Neale v. Dillon*, 534 F.Supp. 1381 (E.D.N.Y.1982); *Moore v. Otero*, 557 F.2d 435 (5th Cir.1977); *Pena*, 702 F.2d 322. In *Neale*, the plaintiff, an Assistant District Attorney, had supervised training, counseling, and evaluation of younger Assistants. Upon returning to work following an approved maternity leave, she was transferred to a different bureau in a non-supervisory position. She resigned, claiming constructive discharge. Her transfer from a supervisory position to a non-supervisory position, with no loss of pay, was held to be insufficient to constitute constructive discharge. Plaintiff's situation was found not to have "become so intolerable that a reasonable person would feel forced to resign." *Id.* at 1390. Similarly, a police officer who exercised supervisory powers, trained probationary patrolmen, and acted as squad supervisor, but was later reassigned to a non-supervisory patrolman's position, was held not to have been constructively discharged. His new assignment still involved substantial responsibility. *Moore*, 557 F.2d at 438 n. 11.

Plaintiff, here, was reinstated at the same job grade, class and salary. While her duties did change somewhat, she was still responsible for processing lottery tickets of equal or greater value, for removing and documenting checks or cash received in settlement envelopes, and forwarding any checks and cash to the accountant for deposit. She was also still responsible for auditing agent settlements and recording any discrepancies. Defendants' Affidavit at ¶ 14. Any change in her position was the result of a reorganization and not an isolated incident of agency mistreatment of her. Plaintiff cannot claim a constructive discharge, where there was "no more than a change in job responsibilities, based on a reasonable business decision on the part of the employer". *Pena*, 702 F.2d at 325.

It is not disputed that, during plaintiff's absence, the weekly lottery was discontinued and all persons associated with it were reassigned or given wind-down duties. Plaintiff's Material Facts at ¶ 6; Defendants' Affidavit at ¶ 11. Plaintiff was one of four employees reassigned after this reorganization. *Id.* at ¶ 12. "Where [all] employees are treated identically, no particular employee can claim that difficult working conditions signify the employer's intent to force that individual to resign." *Bristow*, 770 F.2d at 1255; *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir. 1981). Plaintiff alleges no facts that refute the proposition that much of the change in her responsibilities was due to a business reorganization.

---

2. Plaintiff's affidavit is inconsistent in regards to her claim of no longer handling "income of any kind." Plaintiff's Affidavit at ¶ 34. Plaintiff states that occasionally she did receive checks in the course of her work. *Id.* at ¶ 32. Defendants also state that plaintiff was responsible for any cash or checks that she might receive in the course of her work. Defendants' Affidavit at ¶ 14(d).

### C. Treatment

■ In addition to her altered job responsibilities, plaintiff alleges that in chance meetings with defendants, they neither spoke to nor looked at her. The supervisor who told her about her new job allegedly was very cold to her during their meeting.[3] Defendants do not dispute that there was a certain awkwardness between plaintiff and themselves, nor do they dispute the fact that they did not speak with her. Defendants' Supplemental Affidavit at ¶¶ 20 and 21. They argue, however, that their infrequent, awkward meetings are insufficient to support a finding of constructive discharge. In *Martin v. Citibank N.A.*, 762 F.2d 212 (2d Cir.1985), the plaintiff was one of seven bank employees, six of whom were minorities, ordered to take a polygraph test during an investigation. Upset at having been suspected, questioned, given a polygraph test, and concerned that only blacks had been tested, plaintiff asked to be transferred to a different branch. After her transfer, she complained she was harassed by her supervisor and co-workers. The harassment consisted of her supervisors loudly mentioning plaintiff's polygraph test; being required to process deposits while serving customers, contrary to bank policy; being given the wrong combination to the night deposit safe, once having her deposits blocked from being credited by someone using her supervisor's computer card; and having her lunch hour repeatedly changed. *Id.* at 215. "These incidents do not legally suffice to sustain an inference that a reasonable person would have been 'compelled' to resign." *Id.* at 221. *See also Bourque v. Powell Elec. Co.*, 617 F.2d 61 (5th Cir.1980) (resignation due to lower pay resulting from sex discrimination did not constitute constructive discharge); *Muller v. United States Steel*, 509 F.2d 923 (10th Cir.1975) (unfavorable job assignment and discriminatory failure to promote—no constructive discharge).

The insufficiency of plaintiff's allegations are even more obvious in light of circumstances where courts have found constructive discharge. In *Goss v. Exxon Office Systems*, 747 F.2d 885 (3rd Cir.1984), constructive discharge was found where an employee was reassigned to a new sales territory, resulting in a substantial loss of pay, and told to accept her new territory or quit. The reassignment was based on her sex and pregnancy. Likewise, constructive discharge was found where a pregnant employee was involuntarily transferred to a position requiring heavy manual labor, posing health risks to her and her unborn child and she was denied the opportunity, given to other disabled workers, to do lighter work until she recovered from her "disability." *Meyer v. Brown & Root*, 661 F.2d 369 (5th Cir.1981). Constructive discharge was also found where, following a plaintiff's involvement in union activities, her supervisor became extremely critical of her work, reprimanded her several times, indicated that she was being watched closely for mistakes, and told plaintiff's immediate supervisor not to talk to plaintiff and to "make it hard as possible on her" so she would quit. *NLRB v. Tennessee Packers, Inc. v. Frosty Morn Div.*, 339 F.2d 203, 204 (6th Cir.1964). *Cf. Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559 (1st Cir. 1986).

Here, plaintiff does not allege facts that suggest verbal abuse by defendants (such as threatening to fire her or giving her ultimatums). She does not allege any decrease in salary or benefits, or that defendants were overly critical of her work, or that she was wrongly accused of or disciplined for making mistakes. Plaintiff merely claims she was treated coldly. Her treatment, though potentially unpleasant, was not significantly offensive and is insufficient to support a finding of constructive discharge.

### D. Plaintiff's Subjective Feelings

■ Finally, plaintiff states that her job was monotonous and demeaning in view of her eight and one-half years of experience

---

**3.** The supervisor in question, Eric Meder, is not a party to this action. However, Meder refutes plaintiff's analysis of their meeting, describing it as a brief and "polite yet formal" meeting. Defendants' Affidavit at ¶ 9.

and that she felt ostracized due to the location of her desk. She also states she felt embarrassed and that her job was actually a form of punishment and that all these things led her to feeling like defendants still thought she was guilty. Plaintiff's Affidavit at ¶¶ 33, 35, 42, 43, 47 and 50. Plaintiff's subjective feelings are insufficient to support a finding of constructive discharge. "A claim of constructive discharge must be supported by more than the employee's subjective opinion that his or her position has become so intolerable and difficult that he or she must resign." *Neale,* 534 F.Supp. at 1390; *Nolan,* 482 F.Supp. at 672. "The employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred. They cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting." *Bristow,* 770 F.2d at 1255.

*Conclusion*

In deciding a motion for summary judgment, the court must determine if there is evidence on which the jury could reasonably find for plaintiff. *Anderson v. Liberty Lobby,* 106 S.Ct. at 2510. Plaintiff does not present evidence of facts that, taken to be true, would support a claim of constructive discharge as a matter of law. Because she has not sufficiently supported her claim of constructive discharge, plaintiff has failed to show a deprivation of her right of due process under 42 U.S.C. § 1983. Therefore, defendants' motion for summary judgment is granted.[4]

SO ORDERED.

---

4. Because the court has found no deprivation of a property right has occurred, it is unnecessary to discuss whether defendants' claim of immunity would be applicable as a defense to plaintiff's claim.