Kay HOWARD, Plaintiff,

v.

CAMPBELL SOUP CO., Defendant.

No. 79 C 4169.

United States District Court,
N.D. Illinois, E.D.

Sept. 30, 1983.

Terry Yale Feiertag, Chicago, Ill., for plaintiff.

Theophil Kammholz, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This employment discrimination case under 29 U.S.C. § 206(d) ("Equal Pay Act") and 42 U.S.C. § 2000e-2 ("Title VII") is before the court on a motion for reconsideration of an order denying the motion for partial summary judgment of defendant Campbell Soup Company ("Campbell"). The previously denied motion for partial summary judgment presented evidence on the jobs to which plaintiff Kay Howard is comparing her job in claiming salary discrimination ("comparison jobs"). In that motion, Campbell argued that the evidence showed the comparison jobs to be so dissimilar to Howard's job as to defeat her claim of salary discrimination under Title VII and the Equal Pay Act. Judge Leighton, who heard the motion, denied it on February 11, 1983, explaining that the written job descriptions provided by Campbell were inadequate to determine the comparability of management level jobs. He held that the determination of comparability could be better performed with the help of expert testimony, cross-examination, and other trial aids.

In this motion for partial summary judgment, Campbell claims to have discovered that at trial, Howard will compare her job only with the eight comparison jobs at issue in Campbell's previous motion for partial summary judgment. Therefore, Campbell explains, no evidence that is not now before the court will be presented at trial, rendering partial summary judgment appropriate at this stage. The "undisputed facts" in the affidavits and depositions now possessed by the court, Campbell argues, demonstrate that Howard's job and the comparison jobs are so unequal as to show clearly that Title VII and the Equal Pay Act have not been violated. Campbell also argues that an "absence of any claim of sex segregation in Defendant's classification of jobs establish that Defendant has not violated Title VII under any of the valid standards applicable to a Title VII salary discrimination claim." Defendant's Motion to Reconsider p. 4.[1]

The facts concerning the content of Howard's job are not, however, undisputed. The court will therefore accept, for purposes of this motion, Howard's broader version of her employment duties. According to that version, Howard has occupied the job of Supervisor, Employee Benefits and Cafeteria, from March 1976[2] to the present. This position is classified as grade 18 (grade level determining the salary range of the job).

On August 1, 1976, an opening in the job of Manager, Personnel Services (grade 22)

---

1. Very little evidence has been presented on this issue. Howard has presented none. Campbell, through the affidavit of its current Personnel Manager, claims that eight men preceded Howard in her job of Supervisor, Employee Benefits and that all received the same salary grade level as did she. Howard's salary discrimination claims, however, are not based on her salary and grade level as Supervisor, Employee Benefits, a job she held many years before the actionable period, but as Supervisor, Employee Benefits and Cafeteria. Campbell further notes that three other women are in the managerial positions to which Howard compares her current job. Two of those women, Dorothy LaDuca (Area Manager, Container Manufacturing Quality Control, not a comparison job) and Pamela McHale (Manager, Cost Accounting), reveal in their affidavits that they assumed those posi-

tions on May 1, 1980 and July 1981, respectively. Howard's action predates their assumption of those positions. The only relevant evidence Campbell has presented on this issue is that Mildred Kostka held the position of Manager, Accounts Payable, from August 16, 1975 to September 1, 1978. This alone, while uncontroverted, does not establish as a matter of law that Campbell did not set Howard's grade level and salary lower than it would have had she been male.

2. Judge Leighton ruled on November 7, 1980 that Howard's Title VII claims could concern conduct only after 180 days before September 2, 1976. Howard's Equal Pay Act claim concerns conduct occurring after October 4, 1976, three years before the filing of this suit.

was filled by Dan Drake, a male who Howard claims was less qualified for the job than she. Upon Drake's assuming this job (which Howard had held from November 1972 to May 1975), its duties were sharply curtailed. Howard explains that in her lower grade position of Manager, Employee Benefits and Cafeteria, she inherited many of these duties. In addition, Howard states that she performed some of the remaining duties of Manager, Personnel Services, because of Drake's inexperience. Though doing this extra work of the grade 22 level, she remained at her grade 18 level.

Howard describes the salary discrimination claims at issue here in her memorandum in opposition to the motion to reconsider:

1. The salary that Howard received for the actual jobs she performed was discriminatorily set lower than it would have been for a male.

2. The grade level for the job that Howard actually performed was discriminatorily set lower than it would have been for a male.

*See* Plaintiff's Memo in Opposition to Motion to Reconsider pp. 3–4.

Campbell repeatedly interprets Howard's salary discrimination claims as alleging that the salary grade system itself is discriminatory. Howard's explanation of her action clearly shows that she is claiming the actual job she performed, including the extra duties assigned her because of her sex, received a lower salary and salary grade than other males performing those duties would have or are receiving. In other words, her formal job description may indeed merit its current salary and grade level, but the job content makes it equal to other managerial jobs filled by males and mandating higher pay. It is Howard's actual job, and not her formal job description, for which she claims receiving a discriminatorily low salary and salary grade.[3]

The Howard and comparison jobs are management positions. Campbell, in its motion to reconsider, has referred to numerous affidavits by company personnel describing the comparison jobs and comparing them with Howard's. Campbell concludes that with respect to Howard's job, the comparison jobs each entail greater skill, responsibility, and effort, and are performed under different working conditions. 29 U.S.C. § 206(d)(1).

Howard's and Campbell's evidence on the duties of Supervisor, Employee Benefits and Cafeteria, conflict. The court cannot resolve this factual dispute but will accept for purposes of this motion the broader description provided by Howard. If Howard's explanation of her actual duties reveals that they require different working conditions, skill, effort, or responsibility, then Campbell's motion for partial summary judgment must be granted. If Howard's job, as detailed in her disputed evidence, may by law be "substantially equal" to the comparison jobs, partial summary judgment must be denied.

Under the Equal Pay Act, the plaintiff must compare her salary with the salary obtained by a male in a job "substantially equal" to her own. *Shultz v.*

---

**3.** Actual job content, as opposed to formal job description, is to be considered when comparing jobs under the Equal Pay Act. 29 C.F.R. § 800.121; *Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 265 (3d Cir.), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). Howard's affidavits and deposition reveal that she performed more tasks than is set forth by her job description. These alleged actual duties, if acquiesced in by Campbell, must form the basis of comparison. In *Neale v. Dillon,* 534 F.Supp. 1381, 1385 (E.D.N.Y.1982), the court stated, "It is not necessary for an equal pay claim that the work be formally required, but the lower paid equal work must actually be performed with the knowledge and acquiescence of the employer." In *Neale,* the plaintiff claimed that during a two year period in which she officially held the position of trial supervisor, she actually performed the duties of the higher paid position of deputy bureau chief. The court eventually found that plaintiff's higher level activities were not known to, or requested by, her supervisor. However, in this case, Howard states that her supervisor actually requested her to perform some of the higher level position's duties. Hence, Howard may state an Equal Pay Act claim for her performance of the higher salary graded duties.

*Wheaton Glass Co.*, 421 F.2d 259 (3d Cir.), *cert. denied*, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). *See also Brennan v. Prince William Hospital Corp.*, 503 F.2d 282, 285 (4th Cir.1974) ("significant variations in skill, effort and responsibility" render jobs unequal). Whether two jobs entail equal work must be decided on a case-by-case basis. *Hodgson v. Golden Isles Convalescent Homes, Inc.*, 468 F.2d 1256, 1258 (5th Cir.1972) (per curiam). In making this decision, the court must evaluate each job as a whole, taking into account the Equal Pay Act's broad remedial purpose. *EEOC v. Universal Underwriters Insurance Co.*, 653 F.2d 1243, 1245 (8th Cir.1981). *E.g., Thompson v. Sawyer*, 678 F.2d 257, 272–274 & n. 13 (D.C.Cir.1982) (discussing Equal Pay Act cases concerning males and females doing similar work but using different machines); *Ridgway v. United Hospitals-Miller Division*, 563 F.2d 923, 926 (8th Cir.1977) (district court found urology assistant and ophthalmology technician, both entailing "surgical assistance," to be equal for Equal Pay Act purposes).

■ To demonstrate that her job is substantially equal to the higher paid job, a plaintiff must show that her lower paid job actually entailed equal skill, effort, and responsibility, and similar working conditions. Inequalities in any one of these areas render the jobs unequal for Equal Pay Act purposes. 29 C.F.R. § 800.125.

Skill has been tested with reference to the amount of experience, education, and training required for a job. *Tuma v. American Can Co.*, 373 F.Supp. 218, 228 (D.N.J.1974) (male job required additional 3,000 hours of training); *Pozorski v. Allen-Bradley Co.*, 377 F.Supp. 1288, 1289 (E.D. Wis.1974) (jobs found substantially equal required no difference in "educational or intellectual capacity"). When training may be accomplished in a short time, as when an employee learns by doing, legally significant skill differentials have not been found. *Hodgson v. Miller Brewing Co.*, 457 F.2d 221 (7th Cir.1972). Inequality has been found, however, when the male's job entailed more complex tasks, *Dunlop v.*

*General Electric Co.*, 401 F.Supp. 1353, 1360–1361 (W.D.Va.1975), or required creating a program as opposed to simply administering an ongoing program. *Calage v. University of Tennessee*, 544 F.2d 297, 300 (6th Cir.1976).

■ The levels of skill required need not be utilized in the same amounts as between jobs. 29 C.F.R. § 800.125. Moreover, one job may entail work that another job never requires and substantial inequality may still be found if the bulk of both jobs' duties require equal skill. *Lanegan-Grimm v. Library Association of Portland*, 560 F.Supp. 486, 493 (D.Or.1983); 29 C.F.R. § 800.126. When both sexes perform many of the same duties, with the female performing extra duties requiring greater skills, these extra duties will not remove the jobs from Equal Pay Act protections. *Usery v. Allegheny County Institution District*, 544 F.2d 148, 152–3 (3d Cir.1976); *Lanegan-Grimm*, 560 F.Supp. at 491. Consistent with this principle, when the male's job involves extra duties, those duties must have an economic value commensurate with the higher pay the males command. *Hodgson v. Behren's Drug Co.*, 475 F.2d 1041, 1050 (5th Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973). *Usery v. Board of Education*, 462 F.Supp. 535 (D.Md.1978). In *Grove v. Frostburg National Bank*, 549 F.Supp. 922, 933–34 (E.D.Mich.1982), the court applied these rules and found substantial equality between male and female jobs, notwithstanding a showing that the jobs exhibited variations in several tasks.

■ It is clear from these few cases that the affidavit and deposition testimony now available to the court is inadequate to determine as a matter of law that Howard's position entailed lesser or different skills than did the comparison jobs. Howard's supervisory skills have included scheduling, teaching, and overseeing crews and supervised employees, knowing about the plant's benefit plans and related legal issues, understanding the technical aspects of running a cafeteria, participating in union grievance procedures, dealing with outside

suppliers, insurance carriers, union officials and inside employees of all ranks, improving plant cost efficiency and safety, and taking over the tasks of the supervised employees when necessary.

These managerial skills may be required in equal amount in the comparison jobs. For example, according to Campbell, the positions of Area Manager, Inspection; Area Manager, Production; Area Manager, Container Manufacturing; Area Manager, Warehouse and Shipping; and Manager, Cost Accounting, involve scheduling and training supervised employees. Several of these positions, like Howard's, require training supervisors. All of the comparison jobs involve carrying out already established jobs, with the additional discretion over improving cost efficiency, safety, and attendance. The skills of dealing with subordinates and overseeing their work are exercised in all positions. That some of the supervision involves overseeing different types of subordinate employee activities may not prevent a determination of job equality. First, the affidavits do not address whether or not supervising the different tasks performed by the supervised employees requires different skills, thereby preventing the jobs from being interchangeable. *See Wirtz v. Muskogee Jones Store Company*, 293 F.Supp. 1034, 1037, 1040. (E.D.Okla.1968) (supervisors in one store department could not perform in another department so inequality of jobs found). Even if the tasks are not interchangeable (in other words, requiring different skills), the affidavits reveal neither the value nor the percentage of supervisor time spent in performing the different skilled work.

Certain of the holders of comparison jobs make much of alleged "technical skills" that they believe necessary to their jobs. However, the affidavits do not give the detail necessary on this technical expertise to enable the court to conclude that the skills for those jobs do not equal those for Howard's job. The technical skills may be minimal or easily acquired. Or, the skills may be utilized infrequently and may be a class of work that commands *lower* salary

if performed exclusively. *Brennan v. Board of Education, Jersey City, New Jersey*, 374 F.Supp. 817, 828 (D.N.J.1974) (citing *Hodgson v. Brookhaven General Hospital*, 436 F.2d 719, 725 (5th Cir.1970)).

■ Responsibility is another factor to be considered under the Equal Pay Act in evaluating substantial job equality. Responsibility has been held unequal when the male's job required more creativity. *Horner v. Mary Institute*, 613 F.2d 706 (8th Cir.1980) (male developed courses while female taught already established courses). The extent of supervisory functions is also a significant factor in comparing job responsibilities. *Orahood v. Board of Trustees, University of Arkansas*, 645 F.2d 651 (8th Cir.1981). Supervisors who had jurisdiction over substantially larger departments, budgets, or staffs than the supervisor alleging discriminatory underpayment have established inequality of jobs for Equal Pay Act purposes. *Young v. Columbia University College of Physicians and Surgeons*, 23 E.P.D. ¶ 31,058 (S.D.N.Y.1980) (male supervised eight times as many staff members and ten times as large budget as did female); *Shudtz v. Dean Witter & Co.*, 19 E.P.D. ¶ 9143 (S.D.N.Y.1979) (male supervisor controlled branch over five times as large as branch of female supervisor, had staff of seven while female had staff of one, and created marketing materials and headed road shows which female did not do). In addition, responsibility is measured in part by the amount of individual judgment the employee must exercise. *Orr v. Frank R. MacNeill & Son, Inc.*, 511 F.2d 166, 171 (5th Cir.), 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975); *Maguire v. Trans World Airlines, Inc.*, 535 F.Supp. 1283 (S.D.N.Y.1982); *Kilpatrick v. Sweet*, 262 F.Supp. 561 (M.D.Fla.1967). The greater value of materials, *Usery v. Richman*, 558 F.2d 1318 (8th Cir.1977), or the greater volume of work, *Orr v. Frank R. MacNeill & Son, Inc., supra*, handled by the male employee has justified paying higher wages to the male. The differences of responsibility must, however, be actual and

not theoretical. *Hill v. J.C. Penney Co.*, 688 F.2d 370, 373–374 (5th Cir.1982).

Howard supervised from 12 to 25 hourly employees and two supervisors in the cafeteria alone. She also supervised a staff in the employee benefits area. She would train, oversee, schedule, and, when necessary, replace these employees. She participated in hiring, firing, promotion, and pay increase decisions, and played a role in union grievance procedures. In addition to meeting hundreds of employees yearly to help them with their benefits, Howard dealt with outside insurance carriers, union officials, suppliers, and counsel. Her immediate supervisors were the Plant Manager and Personnel Manager. In addition, Howard has had discretion over disbursements of almost two million dollars in the Group Health Insurance program alone, with accountability for those expenditures and the duty efficiently to dispose of such funds.

The comparison jobs require various levels of supervision over other employees, discretion over budgets as high as three million dollars, and participation in grievance procedures. The largest apparent difference in responsibility concerns the supervisory responsibilities of the Area Manager, Production and the Area Manager, Warehouse and Shipping, who supervise 80 and 100 hourly employees respectively. Again, the inadequacy of affidavits to solve the job comparison issue is demonstrated. The court cannot discern how much time and skill was involved in this supervision over so many hourly employees. In addition, the evidence does not address the level of compensation such (arguably ministerial) supervision could command if performed exclusively. This same analysis applies to the claim that supervision of machine operation, among the duties of Area Manager, Inspection; Area Manager, Production; Area Manager, Container Manufacturing; and Area Manager, Accounts Payable, renders unequal Howard's different brand of supervision. The time spent in overseeing proper machine functioning, the level of skill necessary to perform it,

and the value of the work are unknown factors at this point.

■ A third requirement of Equal Pay Act coverage mandates that the male and female jobs involve equal effort. Effort has been interpreted as including physical as well as mental exertion. *E.g.*, *Wirtz v. Dennison Manufacturing Co.*, 265 F.Supp. 787, 790 (D.Mass.1967) (additional physical effort); *Hodgson v. Daisy Manufacturing Co.*, 317 F.Supp. 538, 551–552 (W.D.Ark. 1970), *aff'd*, 445 F.2d 823 (8th Cir.1971) (additional mental effort). Some courts have found that more physical work required by one job can offset more mental work required by another. *Hodgson v. Daisy Manufacturing Co.*, *supra*.

The court cannot determine from the evidence in front of it whether the comparison jobs involved different levels of effort from Howard's. All jobs required working long hours and week ends and necessitated juggling many different duties. Apart from apparent differences in the amount of standing, walking, and sitting entailed in the several jobs, they seem not to require heavy physical work or, if required, that work appears not to have consumed a great deal of time.

The last Equal Pay Act factor concerns the variance in job working conditions. This "flexible standard," 29 C.F.R. § 800.-131, has been flexibly applied. In one case, males who worked outside of the office did not establish that their job was performed under conditions differing from that of females who worked inside the office. *Wetzel v. Liberty Mutual Insurance Co.*, 449 F.Supp. 397, 403–404 (W.D.Pa.1978). *Accord Edmondson v. Simon*, 497 F.Supp. 411, 414 (N.D.Ill.1980) (no legally significant working condition differences found when males conducted audits at place of business of taxpayer or taxpayer's representative and female worked entirely in employer's office). Given the few cases that have discussed this point, 1 A. Larson *Employment Discrimination*, § 30.40, at 7–57 (1983), the court deems it necessary to hear further evidence on the extent of the unpleasant conditions and the comparative

value of working in a plant as opposed to working in an office or cafeteria.

The court is not convinced by the limited evidence before it that the various supervisory jobs described by Campbell are unequal to Howard's for Equal Pay Act purposes. This being the case, Howard's Title VII salary discrimination claims must also survive summary judgment. *See Lanegan-Grimm*, 560 F.Supp. at 490. Title VII's definition of "equality" for the purpose of comparing salaries, although uncertain, is broader than that of the Equal Pay Act. *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981).

Accordingly Campbell's motion for summary judgment as to Howard's Equal Pay Act and Title VII salary discrimination claims is denied. This case is set for status hearing November 4, 1983 at 9:30 A.M.

It is so ordered.